IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GARY A. WESLEY, SR.,                   *
        Petitioner,
   v.                                            *   CIVIL ACTION NO. JKB-13-2037

GREGG HERSHBERGER, et al.,        *
        Respondent.
                                                ***

**MEMORANDUM**

A response to the petition for writ of habeas corpus with exhibits was filed in the above-captioned case. The matter is now ready for dispositive review. The court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2014); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. §2254(e)(2)). For the reasons to follow, the petition will be denied.

**Factual and Procedural History**

Gary A. Wesley, Sr., was convicted by a jury of the second degree murder and second degree assault of his wife, Teresa Reed Watson, in the Circuit Court for Baltimore County. ECF No. 10, Ex. 5, pp. 1-3, Ex. 11, pp. 5-6. The facts demonstrated during the trial, as summarized by the Court of Special Appeals of Maryland, are as follows:

> On February 2, 2006, appellant killed his wife, Teresa Reed Watson Wesley during a domestic dispute. Evelyn (Joy) Watson, the adopted daughter of the victim from a previous marriage, and Kailani Amerson, a twenty-four-year-old who lived with the Wesleys at their home, testified that earlier in the evening of February 1, appellant was involved in a verbal altercation with Mrs. Wesley and "Andre," a family friend.

Ms. Amerson testified that appellant accused Andre of "lying to his wife, saying that he was using drugs." When appellant grabbed Andre, Mrs. Wesley separated them. Arrangements were made for appellant to pack up his belongings and "for him to go and stay with Andre." According to Ms. Amerson, both men left the house but returned separately. After another argument broke out between appellant and Mrs. Wesley, Mrs. Wesley called the police. This was the first of three times that the police were summoned to the Wesleys' house that night. The police arrived and then left after things apparently calmed down.

Later, after appellant hit himself in the head, he called the police and complained that his wife was beating him, prompting a second visit by the police. After the police left, according to Amerson, "everybody pretty much went about their normal routine, taking their showers, getting ready for bed." Mrs. Wesley "went back into the bedroom and closed the door." That did not, unfortunately, end the dispute between appellant and his wife.

In fact, it soon took a violent turn. When Mrs. Wesley approached appellant with the pills he had asked her to get for him, appellant "rushed her and she lost her balance and fell in against . . . her desk that was against the wall by the door" of the room she used as an office. "It looked like he was hitting her," testified Ms. Amerson. When Amerson tried to assist Mrs. Wesley during this struggle, appellant "flung" her against the wall, "pretty much like a rag doll." Then, Amerson "looked up to see that he was stabbing" Mrs. Wesley with a "kitchen knife." Unable to stop appellant, she "started screaming."

Ms. Watson testified that, at approximately 11 p.m. that night, she awoke to her mother's screams. Ms. Amerson told Watson that Mrs. Wesley had been stabbed and was "bleeding all over." Watson immediately called 911.

After stabbing Mrs. Wesley, appellant left the house. But, in attempting to drive away in the family car, he crashed the vehicle into Joy Watson's car. Although Amerson and others tried to hold the door closed, appellant "kicked it in," "snatched" a piece of the doorframe off, and "came after" Amerson and others in the house, "scream[ing] he was going to kill us all." Appellant then resumed his assault on Mrs. Wesley, as she lay incapacitated in the office.

When the police arrived, appellant locked himself in the office with his wife and threatened to cut her throat if they entered. The ensuing standoff, during which appellant beat, cut, and stabbed his wife, lasted approximately two hours.

Officer Don Markuso of the Baltimore County Police Department was second on the scene. He testified that he and other responding officers

> began to scream and holler, . . . police, stop, . . . talk to us, tell us

> what's going on. We could hear all the hitting, the punching, the kicking, the screaming. We could hear the female screaming and it seemed after every . . . time you would hear that skin on skin, you'd hear this . . . really bad scream. We could hear the male yelling at her, . . . bitch, shut up, you did this to me, this is your fault, you ruined me, you ruined my life, you ruined my marriage and it was just a barrage of this screaming and hitting and punching and it was . . . a lot of commotion all at one time.

Officer Markuso also heard Mrs. Wesley tell appellant that she loved him and did not want to die. When Mrs. Wesley's voice faded, Markuso asked to enter and help her. Appellant replied, "she's not dead enough yet." Shortly thereafter, appellant opened the door and police officers found Mrs. Wesley dead on the floor. The medical examiner determined that Mrs. Wesley suffered seven stab wounds, 147 cutting wounds, and multiple blunt force injuries.

Testifying in his own defense, appellant complained that Mrs. Wesley repeatedly made false accusations about him to the police. According to appellant, after police left for the second time, Mrs. Wesley called him into her office and then lunged at him with a knife from her desk. After he was able to ultimately wrench the knife from her, he stabbed her in self-defense, he claimed. He explained the "taunting" statements he made to the police before killing Mrs. Wesley because he wanted them to "kick the door down" and kill him, making his wife regret what she had put him through.

In support of appellant's self-defense claim, the defense pointed to evidence that appellant's palm print was found on the blade of the knife and cited an incident on November 27, 1983, when appellant was stabbed by an unidentified assailant with scissors fifteen times on the left side of his neck. Appellant testified that the trauma he experienced from that attack made him feel that he was in "imminent danger" when Mrs. Wesley approached him with a knife.

ECF No. 10, Ex. 5, pp. 2-5 (footnote omitted).

Petitioner was sentenced to a total term of 40 years' incarceration. *Id*., Ex. 1 & 5. He noted a timely appeal raising the following claims in the Court of Special Appeals:

1. Did the circuit court violate Appellant's right to a speedy trial pursuant to Maryland Rule 4-271?

2. Did the trial court err in refusing to admit Kailani Amerson's prior statement?

3. Did the trial court err in not admitting a relevant transcript into evidence?

3

4. Did the trial court commit plain error in instructing the jury on reasonable doubt?

*Id.*, Ex. 5, p. 2.

Petitioner's convictions were affirmed on August 14, 2009. *Id.*, Ex. 5.  Petitioner filed a self-represented petition for writ of certiorari raising the same four claims. *Id.*, Ex. 6. The petition was denied on November 13, 2009. *Id.*, Ex. 7.

Petitioner filed for state post conviction relief on February 25, 2010. *Id.*, Ex. 1 & 8.  The petition, as amended and construed by the post-conviction court, alleged trial counsel error in failing to

1. Obtain (and the prosecutor to provide) a written transcript of the police interview of Kailani Amerson;
2. Object to the trial judge's reasonable doubt instruction;
3. Object to the trial judge's "cross-examination" of Ms. Amerson;
4. Prepare for a motions hearing on March 8, 2007;
5. Object to the judge's determination to withhold deciding Petitioner's eligibility for life without parole until after a verdict;
6. Impeach a witness's (Ms. Amerson) prior inconsistent statement;
7. Object to the use of inflammatory crime scene photos of the victim;
8. Object to an inconsistent verdict, as Petitioner was never charged with second degree assault;
9. Introduce to the jury Petitioner's history of impaired mental health;
10. Object to jury instructions and statements by the prosecutor which improperly shifted the burden to the Defendant to disprove malice;
11. Move for a speedy trial and failure to move for dismissal based on speedy trial violation/invalid postponement;
12. Cross-examine effectively/impeach the State's witness with her prior inconsistent statement;
13. Interview State's witnesses;
14. Hire a private investigator;
15. Investigate the State's case given that the eyewitness could not have seen the event from her location;
16. Object to a jury instruction;
17. Object to a legally inconsistent verdict;
18. Request a pre-sentence investigation (PSI).
19. Prepare for sentencing;
20. Present mitigating factors and evidence of diminished capacity;

4

21. Call or prepare sentencing witnesses, including a psychiatrist;
22. File a Motion for Modification or Reduction of Sentence; and
23. Test the piece of splintered doorframe for blood/DNA.

ECF 10, Ex. 11, pp. 3-5.  Petitioner also alleged the State erred in failing to

1. Reduce Ms. Amerson's interview to a written transcript;
2. Provide a written transcript of an eyewitness's testimony;
3. Disclose exculpatory and/or impeachment evidence;
4. Disclose impeachment evidence in police/prosecution files;
5. Play for the jury the entire DVD recording of Petitioner's interview with police, i.e., playing only two of the twelve clips, thereby violating Fundamental Fairness.

Petitioner also claimed: 1. prosecutorial misconduct; 2. violation of his Fifth Amendment right to counsel by failing to stop the police interview upon Defendant's request for an attorney; 3. illegal conviction for second degree assault, as the statute of limitations had run;  and 4. failure of the trial court to properly instruct the jury. *Id*.

The petition was denied on May 21, 2012, by the Circuit Court for Baltimore County. Id., Ex. 11.  Petitioner filed an application for leave to appeal the post-conviction court's decision, alleging that (A) the post-conviction judge failed to recuse himself; (B) the postponement granted by the trial court on July 10, 2006, was invalid under the Maryland rules; (C) trial counsel was ineffective for failing to file a motion for modification of sentence; (D) the prosecutor unfairly played only two "clips" from a DVD; and (E) his *Miranda* rights were violated because he was questioned after he invoked his right to an attorney. *Id*., Ex. 12. Petitioner's application for leave to appeal was denied summarily by the Court of Special Appeals.  The Court's mandate issued on May 9, 2013. *Id*., Ex. 13.

Here, petitioner maintains that (1) the postponement of his trial on July 10, 2006, violated his rights; and (2) his trial counsel was ineffective for failing to file a motion for modification of sentence. ECF 1.

**Timeliness, Exhaustion of State Remedies, Procedural Default**

Respondents do not contend, and the court does not find, that the petition was filed outside the one-year limitations period set forth in 28 U.S.C. § 2244(d)(1), or that any of petitioner's claims have been procedurally defaulted. Further, petitioner no longer has any state direct review available to him with respect to the claims now before the court; thus, the court finds the claims are exhausted for the purpose of federal habeas corpus review.

**Standard of Review**

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). This standard is "highly deferential" and "difficult to meet." *Cullen v. Pinholster*, 563 U.S. __, ___, 131 S. Ct. 1388, 1398 (2011); *see also White v Woodall,* ___U.S.__, 134 S. Ct 1697, 1702 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, __, 131 S. Ct. 770, 786-87 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.")).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits 1) "resulted in a decision that was contrary to, or involved an unreasonable application

of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254 (d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Rather, that application must be objectively unreasonable." *Id*. Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or

incorrectly.*" Renico v. Lett,* 599 U.S 766, 773 (2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id*. at 379.

The Antiterrorism and Effective Death Penalty Act (AEDPA) erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error ... beyond any possibility for fairminded disagreement." *Harrington v. Richter,* 562 U.S. 86,___, 131 S. Ct. 770, 786–87 (2011). "If this standard is difficult to meet"—and it is—"that is because it was meant to be." *Id.,* 786. A federal court reviewing a habeas petition will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.,* 786 (internal quotation marks omitted).

**Analysis**

Under Maryland law there is a requirement that the prosecution bring a defendant to trial within 180-days of the appointment of counsel or the appearance of counsel unless a

postponement for good cause shown is granted by the trial court. *See* Md. Rule 4-271(a)(1). The assertion that the state law, 180-day requirement has been violated does not implicate petitioner's Sixth Amendment right to a speedy trial. Assuming the violation occurred, it is not a cognizable claim for federal habeas corpus relief. *See Estelle v. McGuire*, 503 U.S. 62, 67- 68 (1991). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id*. In the absence of a claim of a federal constitutional violation, the claim is not cognizable. *See* 28 U.S.C. § 2254(a) (a federal court may entertain a state prisoner's habeas petition "only on the ground that he is in custody in violation of the Constitution or law or treaties of the United States.").

To the extent petitioner claims his right to a speedy trial guaranteed by the Sixth Amendment of the U.S. Constitution was violated, the claim nevertheless fails. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial." Despite the breadth of the amendment's language, some delay of trial is constitutionally permissible. *See Doggett v. U.S.*, 505 U.S. 647, 651 (1992).

In order to determine if petitioner's Sixth Amendment right to a speedy trial was violated, four factors must be considered. The four factors to be considered are the length of the delay, the reason for the delay, the timeliness of the assertion of the right, and the actual prejudice suffered as a result of the delay. *See Barker v. Wingo*, 407 U.S. 514, 532 (1972). The Court cautioned,

> We regard none of the four factors identified above (length of delay, reason for delay, defendant's assertion of his right, and prejudice to the defendant) as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no

> talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

*Id*. at 533 (footnote omitted).

Prejudicial effect of a delay includes oppressive pretrial incarceration, anxiety of defendant, and, most importantly, impairment of the ability to prepare a defense. *See Moore v. Arizona*, 414 U.S. 25 (1973).

> Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground. While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him.

*Doggett*, 505 U.S. at 656-57.

In rejecting petitioner's claim regarding the delay of his trial, the state court found not only that the judge who granted the delay was in fact authorized to do so under Maryland law, contrary to petitioner's assertion, but that the postponement judge found good cause to postpone petitioner's trial. The postponement was requested by petitioner's counsel, over petitioner's objection, due to petitioner's lack of cooperation with defense counsel, petitioner's desire for new counsel, petitioner's request for additional investigation, and counsel's desire to have petitioner's competency examined. ECF 10, Ex. 5, p. 5, pp. 3-11.

In rejecting petitioner's claim regarding the delay of his trial, the court of appeals noted that petitioner, "not his defense counsel—created the need for such a delay, by requesting a change of counsel and further investigation approximately one month before the scheduled trial date. The [postponement] court made it clear the purpose of the postponement was to allow

defense counsel to accommodate appellant's requests" (*Id*., p. 12) as well as to reconsider petitioner's competency. *Id*., p. 12-13.

Petitioner's trial deadline, under Maryland law, was September 9, 2006. He was tried on April 23, 2007. The length of the delay was not unreasonable. While petitioner timely asserted his right to a speedy trial, the reason for the delay was occasioned by his own conduct, and he has demonstrated no actual prejudice suffered as a result of the delay. Accordingly, he is not entitled to habeas relief on this claim.

As to petitioner's claim that his trial attorney erred in not filing a motion for modification of sentence, his claim also fails. When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The second prong requires the court to consider whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id*. at 696. Although "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," it is equally true that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. at 690-91. Where circumstances are such that counsel should conduct further investigation to determine "whether the best strategy instead would be to jettison [a chosen] argument so as to focus on other, more promising issues," failure

11

to conduct further investigation can amount to constitutionally deficient assistance. *See Rompilla v. Beard*, 545 U.S. 374, 395 (2005) (O'Connor, J., concurring). Counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, and the burden to show that counsel's performance was deficient rests squarely on the defendant. *See Burt v. Titlow*, ____ U.S. ____, 134 S. Ct. 10, 17 (2013).

A showing of prejudice requires that 1) counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable, and 2) there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *See Strickland*, 466 U.S. at 687, 694. "The benchmark [of an ineffective assistance claim] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687; *Harrington*, 131 S. Ct. at 787–88 (citing *Strickland*, 466 U.S. at 687). A determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *Strickland*, 466 U.S. at 697.

Petitioner's claim provides no ground for relief as petitioner had no constitutional right to counsel in connection with the motion for reconsideration of sentence. *See Wainwright v. Torna*, 455 U.S. 586, 586-88 (1982) (per curiam) (confirming that a criminal defendant cannot complain about ineffective assistance where the defendant has no constitutional right to counsel in pursuit of discretionary relief).

Moreover, the state post-conviction court rejected petitioner's claim, finding that petitioner did not ask counsel to file a motion for modification on his behalf. The state court found that trial counsel did not have per se responsibility to file the motion in the absence of a request by petitioner.  Moreover, trial counsel had filed, on petitioner's behalf, a Notice of Appeal, Motion for New Trial, and Motion for Review of Sentence by a three-judge panel.  Trial counsel indicated that he did not believe the trial judge would modify his own sentence and since the three-judge panel could not exceed the sentence rendered in this case, the three-judge panel was the better avenue to seek review of petitioner's sentence.  The post-conviction court found counsel's decision a reasonable tactical decision. ECF No. 10, Ex. 11, pp. 21-22.  These findings, supported by the record, are presumed correct.  Applying these facts to *Strickland*, petitioner is not entitled to relief.  The state court's determination shall not be disturbed.

## **Conclusion**

The record establishes, and this court determines, that petitioner is not entitled to federal habeas relief.  There is no basis for finding constitutional deficiencies in the state court proceedings, and petitioner has failed to rebut the presumption of correctness of the findings of fact underlying the rejection of his grounds for relief.

Additionally, a certificate of appealability is not warranted as it may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327

(2003). Because this court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied. *See* 28 U.S.C.§ 2253(c)(2).

Accordingly, the petition shall be dismissed with prejudice and a certificate of appealability shall not issue. A separate order follows.


Date:   April 27, 2015                                                  /s/
                                                            James K. Bredar
                                                            United States District Judge